# Bernard McGovern, Appellant, v. Union Traction Company.

*Negligence—Street railways—Crossing streets—Contributory negligence —Question for jury.*

A foot passenger crossing a street, especially a wide one with double tracks, does not do his whole duty by a single look before starting. In the space where cars and other vehicles have concurrent rights with his own, he is bound to keep eyes and ears open for new dangers, and to use reasonable care in avoiding them.

A woman stopped at the curb of a street, and looked before attempting to cross. The trolley car that subsequently struck her was then approaching at a distance of 185 feet. She stood there " some time " after looking, and while crossing the track she was struck. The evidence was conflicting as to the speed of the car and its distance from the woman immediately before she stepped on the track. *Held*, that the question of contributory negligence was for the jury.

Argued April 3, 1899. Appeal, No. 66, Jan. T., 1899, by plaintiff, from order of C. P. No. 4, Phila. Co., Sept. T., 1895, No. 258, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's wife.

The facts appear by the opinion of AUDENRIED, J., entering nonsuit, which opinion was in part as follows:

This is an action of trespass, brought by Bernard McGovern against the Union Traction Company to recover damages by reason of the killing of his wife through the alleged negligent operation of a car on South street by the officers, agents or employees of the defendant corporation. The plaintiff's case, as I recall the testimony, is this:

On November 23, 1895, Mrs. McGovern started to cross South street on the east line of Barnwell street. According to the testimony of several witnesses, as she left the curb on the south side of South street a trolley car owned and operated, so far as the evidence disclosed, by the Electric Traction Company, was approaching. South street at this point falls rapidly, at a steep grade. When she left the curb line this car was at or near the line of Twenty-sixth street. According to one witness it was

east of Twenty-sixth street, according to another it was at Twenty-sixth street, and according to a third it was about one house west of Twenty-sixth street. The point is, that the car was no very great distance off. That is to say, it was within approximately 150 feet of where this woman was when she started to cross the street. That car was approaching with a very high degree of speed. One witness likened its speed to the whizzing of a shot. Another said it was coming two or three times faster than any other street car that he had ever seen. Mrs. McGovern advanced across the street. We have had no testimony on the question of whether or not she continued her observation of the car, although it is in evidence that before leaving the curb she looked up and down the street, apparently for the purpose of ascertaining whether or not she had anything to fear from cars or wagons. After she had got on the track on the north side of South street, that being the track on which this electric car was approaching, she was struck, somewhere between the two rails. She was knocked down and rolled under the car for some distance, and the car, by reason of its speed, and the inattention of the motorman, who does not seem to have been aware that the woman had been struck, was not stopped until it had almost reached Chippewa, or Twenty-seventh street. At that point the car wheel passed over the woman's body, and cut her in two, and she died. The bell, according to the testimony of witnesses whom we have heard, was not rung as the car approached Twenty-sixth street or as it approached Barnwell street. The motorman seems to have had his face averted from the direction in which the car was going, and was looking back toward the conductor, or off to one side. He was not looking in the direction in which the car was going. Those are the facts which have been made to appear so far as concerns the actual occurrence out of which this proceeding has arisen.

It lies on the plaintiff, in a case like this, when an action is brought in trespass, to establish the negligence of the defendant, and the fact also that the injuries from which the plaintiff's alleged damages have resulted were the proximate results of that negligence.

I apprehend that it would be my duty to let this case go to the jury if the only question involved was as to whether or not,

supposing that the car has been shown to have at that time been in the control and under the operation of the Union Traction Company, one of the defendant's employees had been negligent. Facts enough have been proved here, I think, to make it a matter from which negligence could be inferred. But the plaintiff must show more than that. The plaintiff must not only show negligence, but that the injuries of his wife and her death were proximate results of that negligence, and were not superinduced or contributed to by any other cause which has intervened. But here we have, I think, a supervening cause, that of Mrs. McGovern's own imprudence or carelessness, which appears to have contributed quite as much to her lamentable death as the negligence of the motorman on the car by which she was killed.

The car is said by the witnesses to have been in plain sight. Her eyesight is said to have been good. The day was clear, and not foggy. It was between 9 and 10 o'clock in the morning, and there was nothing to prevent her from seeing this car. If she did not see it it was because she did not look, and the witnesses who have said that she did look have not told the truth. Supposing she did look, she must have seen the car, and not only must have seen the car, but have seen that the motorman was not attending to his business. She must also have noticed the fact, which several witnesses have testified to, that the car was coming at a very unusual rate of speed. Despite those facts, which she ought to have seen, she started to cross the street. The only inference to be drawn from the fact that she was struck by the car under those conditions is that she discontinued her observation; that she did not again glance toward the car, but took the chances, thinking she could get across ahead of it. To my mind her conduct, quite as much as the negligence, if we may so call it, of the motorman on that car, contributed to what happened. On that ground alone I think that the entry of a nonsuit would be proper. . . . On that ground, as well as on the ground that the allegation that the car which caused Mrs. McGovern's death was operated by a servant of the defendant company has not been proved, I enter the judgment of nonsuit.

*Error assigned* was refusal to take off nonsuit.

*A. T. Freedley*, with him *U. S. Koons*, for appellants, cited on the question of contributory negligence : Streitfeld v. Shoemaker, 185 Pa. 268; Tiffany v. Delaware, etc., R. R. Co., 185 Pa. 308; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233; Smith v. Baltimore & Ohio R. R. Co., 158 Pa. 83; Callahan v. Phila. Traction Co., 184 Pa. 425; Nugent v. Traction Co., 181 Pa. 160; Blaney v. Traction Co., 184 Pa. 524; Jones Bros. v. Greensburg, etc., Ry. Co., 9 Pa. Superior Ct. 65; Jackson v. Traction Co., 159 Pa. 399.

*Thomas Leaming*, with him *William Henry Lex*, for appellee, cited Buzby v. Phila. Traction Co., 126 Pa. 559; Warner v. Peoples' St. Ry. Co., 141 Pa. 615; Carroll v. Penna. R. Co., 12 W. N. C. 348; Flanagan v. P., W. & B. R. R. Co., 181 Pa. 237; Blaney v. Electric Traction Co., 184 Pa. 524; Rauscher v. Phila. Traction Co., 176 Pa. 349.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1899:

It is conceded that with reference to the speed of the car and the inattention of the motorman there was evidence to take the case to the jury, but the judge nonsuited the plaintiff on the ground of contributory negligence of the deceased.

There are two classes of cases, considered with regard to this kind of accident, in which nonsuits are properly entered, first, the class of which Carroll v. R. R. Co., 12 W. N. C. 348, is the prototype, where a person not looking, or claiming to have looked and not to have seen what was manifestly and unavoidably visible, steps directly in front of a moving car; and, secondly, where a person seeing a clearly impending danger accepts the risk, relying on his own judgment that he can escape it. Of this class Smith v. Electric Traction Co., 187 Pa. 110, is a fair example.    In either class the negligence of the injured must be the clear and unavoidable inference from the undisputed facts before the court can pronounce it as matter of law.

In the present case there is affirmative evidence that the deceased stopped at the curb and looked before starting to cross the street.    The car which subsequently struck her was then approaching on the north track at a distance variously estimated at 120 to 185 feet.    At least one witness testified that it was at about the latter distance, being east of Twenty-sixth

street, with the intervening street which the car would have
to cross.   It is argued by the appellee that the deceased stood
"some time" on the curb, after looking, before stepping into
the street.   How far this may have modified her act of look-
ing was, however, clearly for the jury.   But it is further ar-
gued by appellee, and this is perhaps the pinch of the case, that
although the car may have been east of Twenty-sixth street when
she started, yet it had crossed that street and was so close to her
by the time she reached the north track, and going at such speed,
that she was bound to see the danger and stop before putting
foot on the track.   If this was clear, unquestionably it was neg-
ligence.   A foot passenger crossing a street, especially a wide
one with double tracks, does not do his whole duty by a single
look before starting.   In the space where cars and other vehi-
cles have concurrent rights with his own, he is bound to keep
eyes and ears open for new dangers and to use reasonable care
in avoiding them : Nugent v. Traction Co., 181 Pa. 160.

But in the present case the facts are not undisputed.   The
distance of the car and the rate of speed were the subject of
testimony not entirely uniform, and there was no evidence as
to the action of the deceased at this point in regard to the ap-
proaching car.   It was not one of those clear cases that should
be taken from the jury.

Another point was made in support of the nonsuit, that there
was no sufficient evidence that the car was under the control of
the defendant.   It appears that the South Street Railway was
operated formerly by the Electric Traction Company, which
was subsequently leased to the defendant, with a guaranty of
indemnity as to liabilities, etc.   It is claimed by appellant that,
in fact, the railway was under the defendant's control at the
time of this accident, though the formal lease was not signed
till later.   Little attention was given to this branch of the
case by either party, and the judge distinctly put the nonsuit
on the other ground.   It is not clear to us how plaintiff can
avail himself of the electric company's rights of indemnity of
the Union Traction Company's liability under contract, but as
he may be able to establish a duty to him under the facts or the
law, we leave this question open for further development, and
reverse on the first ground alone.

Judgment reversed and procedendo awarded.